NO. 07-07-0478-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 21, 2008

_____

ROBERT EUGENE JORDAN, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 19143-B; HON. JOHN BOARD, PRESIDING

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Robert Eugene Jordan, was convicted of the offense of murder enhanced by one prior felony conviction and subsequently sentenced to 99 years confinement in the Institutional Division of the Texas Department of Criminal Justice and ordered to pay a fine of $10,000.  By two issues, appellant contends that the judgment of the trial court should be reversed.  We affirm.

Factual and Procedural Background

Appellant was charged with the murder of Donald White, who had been found shot to death in Randall County. At the time the body was discovered, the deceased was stripped of his clothing and his hands had been taped with duct tape. The record reflects that these facts had not been disclosed to the media. Randall County Sheriff's Investigator, Paul Horn, determined that William Sean Gilmore was a "person of interest" in connection with the murder case and spoke to Gilmore at the Amarillo Police Department on January 14, 2005. Previously, Gilmore had been arrested by Amarillo Police on charges unrelated to the murder. Gilmore provided Horn with a written affidavit that declared that appellant had told him that, appellant and Mark Hanson took the deceased to a dirt road where they "ruffed him up," stripped him naked and taped him up with duct tape before shooting him. Contained within Gilmore's statement was an assertion that Gilmore was employed at the Big O Tire store as a tire tech. This statement became the focal point of a motion to suppress evidence subsequently filed by appellant. On the same day, but shortly after speaking with Gilmore, Horn interviewed Bobbye Marie Eckert, appellant's cousin, about the murder. Eckert gave an affidavit to Horn that alleged that appellant had told her that "he himself shot Donny." Also contained within Eckert's affidavit were statements that appellant had told her about making the deceased take his clothes off and tying the deceased up with duct tape.

On January 18, 2005, Horn signed a complaint alleging appellant had murdered the deceased. Contained within the complaint was the statement made by Horn that "defendant admitted committing this offense to William Sean Gilmore, a reputably employed citizen who has signed a sworn affidavit to that effect . . . ." An arrest warrant

2

was issued for appellant's arrest based upon the complaint filed by Horn. Appellant subsequently gave a written statement to Horn admitting his participation in the murder.

Appellant filed a motion to suppress his confession alleging that the arrest and detention were illegal and denied appellant his constitutional rights. A hearing on appellant's motion to suppress was held on October 25, 2007. After hearing the evidence relative to the issuance of the arrest warrant for appellant, the trial court overruled the motion to suppress and the case proceeded to trial. After the jury returned a verdict of guilty, the State proceeded to introduced evidence bearing on the issue of punishment including testimony regarding appellant's participation in a drive-by-shooting in Amarillo. At the conclusion of the testimony regarding the drive-by-shooting incident, appellant requested the trial court strike all of the testimony offered by the State regarding the incident. The trial court denied the request and appellant's subsequent motion for mistrial. The jury sentenced appellant to 99 years confinement and a fine of $10,000. It is from this judgment that appellant appeals.

Through his two issues, appellant alleges that the trial court erred in; 1) failing to grant the motion to suppress, and 2) allowing punishment evidence which failed to demonstrate an offense beyond a reasonable doubt. We disagree with appellant and will affirm the judgment.

Motion to Suppress

Appellant's first issue is directed to the trial court's ruling on the motion to suppress appellant's statement. We review a trial court's decision on a motion to suppress under an abuse of discretion standard. See Lowery v. State, 98 S.W.3d 398, 399 (Tex.App.–Amarillo 2003, no pet.) (citing Guzman v. State, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997)). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. Id. (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990, op. on reh'g)). We accord almost total deference to the trial court's determination of historical facts, especially when those determinations turn on witnesses' credibility or demeanor. See Neal v. State, 256 S.W.3d 264, 280 (Tex.Crim.App. 2008). However, we review *de novo* the trial court's application of law to facts not turning on credibility or demeanor. Id.

Appellant's contention is that the affidavit filed by Horn, to support the issuance of an arrest warrant, contained false statements and, therefore, appellant was permitted to go behind the four corners of the affidavit. See Franks v. Delaware, 438 U.S. 154, 155-6, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The false statement, according to appellant, was that "defendant admitted to William Sean Gilmore, **a reputably employed citizen** . . . ." (emphasis added). According to appellant's theory, the proof at the hearing to suppress his own statement was that Gilmore was not employed at the Big O Tire store at the time of execution of the affidavit in support of the arrest warrant and Horn knew this fact. Further, appellant contends that Gilmore had an extensive criminal record and was in fact under arrest for several offenses when Horn interviewed him at the Amarillo Police

4

Department. Finally, appellant contends that, at the time Horn obtained the statement from Gilmore, Horn was aware that Gilmore was a captain in the Aryan Brotherhood. Appellant posits that, because Horn was aware of all of these facts when he signed his affidavit in support of the arrest warrant, the trial court erred in not voiding the arrest warrant and suppressing appellant's statement.

Franks stands for the proposition that if a defendant can establish that a warrant affidavit contains false statements made either knowingly and intentionally or with reckless disregard for the truth and that the false statement was necessary to the finding of probable cause, then the defendant is entitled to a hearing in an attempt to suppress any evidence subsequently gathered. Id. Texas has adopted the Franks methodology in dealing with probable cause affidavits. See Harris v. State, 227 S.W.3d 83, 85 (Tex.Crim.App. 2007). The record of the pre-trial hearing is unclear as to whether the trial court required appellant to make the preliminary showing required by Franks. What is clear is that the trial court required the State to develop, through the testimony of Horn, all of the facts leading up to the issuance of the arrest warrant. Further, appellant was permitted to extensively cross-examine Horn regarding all of his actions prior to obtaining the arrest warrant. We will assume, for purposes of this opinion, that appellant made the requisite preliminary showing and that the trial court conducted a full Franks hearing.

Once the appellant establishes the prerequisites required to obtain a full Franks hearing, appellant has the burden of establishing the allegation of perjury or reckless disregard for the truth by a preponderance of the evidence. Franks, 438 U.S. at 155-56, Harris, 227 S.W.3d at 85. It is during this proceeding that appellant may present evidence

5

that goes behind the four corners of the affidavit.  Cates v. State, 120 S.W.3d 352, 355 n.3 (Tex.Crim.App. 2003).  If, after the hearing, the trial court determines the appellant has met his burden of proof, the false information contained in the warrant affidavit must be disregarded.  Franks, 438 U.S. at 155-56, Harris, 227 S.W.3d at 85.  If the remainder of the affidavit does not contain sufficient probable cause to support the issuance, the warrant is voided and any evidence obtained as a result of its issuance must be excluded.  Franks, 438 U.S. at 156, Harris, 227 S.W.3d at 85.

The record of the suppression hearing clearly shows that Gilmore told Horn he was working as a "tire tech" at the Big O Tire store.  Further, Horn testified that when he interviewed Gilmore, Gilmore presented himself as one who might be working at a tire store doing some sort of manual labor.  Specifically, Horn testified that Gilmore had a work shirt on similar to what you would expect such an employee to be wearing, that Gilmore's hands were dirty and grimy as you might expect from one working at a tire store and, Gilmore smelled like he had been working in a garage or tire store.  Appellant posits that, by the time of his interview with Gilmore, Horn had learned that an incident report was filed by an Amarillo Police officer stating that the manager of the Big O Tire store had informed the officer that Gilmore did not work there.  Appellant contends this information was either known or should have been known by Horn.  However, the record before us reflects that Horn testified that the report was filed on January 17, 2005, three days after he had obtained Gilmore's affidavit.  Further, Horn testified that he never spoke with the officer who filed the report or even became aware of the information contained in it until after the issuance of the arrest warrant.  During the pre-trial hearing, the State produced another

6

report from the Amarillo Police Department indicating that the manager of the tire store was probably not telling the truth about his relationship with Gilmore. It is significant that Gilmore's affidavit contained information that was not known to the general public, information that could have only been acquired from someone who was involved in the commission of the murder. This information is an indicia of reliability. In addition to the testimony regarding Gilmore's employment and Horn's lack of knowledge to the contrary, the testimony at the pre-trial hearing clearly demonstrated that Horn did not act upon Gilmore's information until he had corroborated it by obtaining an additional affidavit from Bobbye Marie Eckert. Eckert's affidavit corroborated Gilmore's in that it also contained the same facts that were not known to the general public.

When all of this evidence is reviewed *in toto*, this Court does not find that the trial court abused its discretion and we will defer to the trial court's reasonable belief that Horn did not intentionally and knowingly give false information in the affidavit, nor was he guilty of recklessly disregarding the truth. Guzman, 955 S.W.2d at 87. Rather, the totality of the circumstances shows that Horn was unaware of the information that would seem to say Gilmore was not employed and the State went to great lengths to corroborate the facts, as stated in the Gilmore affidavit, regarding the commission of the offense by appellant. Appellant failed to meet his burden of proof at the Franks hearing. Franks, 438 U.S. at 155-56, Harris, 227 S.W.3d at 85. Accordingly, appellant's first issue is overruled.

7

Motion to Strike Punishment Evidence

By his second issue, appellant contends that the trial court erred in admitting punishment evidence concerning an extraneous offense. Specifically, appellant asserts that the trial court erred by denying appellant's motion to strike the testimony of three witnesses, Leona Price, Cory Richardson, and Shawn Uselding. These witnesses testified about a drive-by-shooting that occurred on March 14, 1998, when a shotgun was fired at the home of Leona Price. The record reflects that, after the State had rested its punishment evidence, appellant requested that the trial court strike the testimony of the three named witnesses and that the jury be instructed to disregard that testimony, because the State had failed to prove the extraneous offense beyond a reasonable doubt.

The testimony at issue was offered after the State had filed a notice of intent to offer evidence of "all other crimes, wrongs or acts of the defendant during the punishment phase . . . ." See TEX. CODE CRIM. PROC. ANN. art. 37.07 sec. 3(g) (Vernon 2007).[1] This notice of intent to offer evidence of other crimes, wrongs or acts of the defendant was filed in reply to request for notice of intent to offer evidence of extraneous crimes or bad acts filed by appellant. In the response to the request for notice filed by appellant, the State notified appellant that it intended to produce evidence that on or about March 14, 1998, appellant either committed deadly conduct by discharging a firearm at a dwelling occupied by Leona Weathersbee or acted as a party to said conduct. (Leona Weathersbee was identified at

---

[1]Further reference to the Texas Criminal Procedure Code shall be by reference to "art. ____."

trial as Leona Price). This evidence was offered pursuant to article 37.07 sec. 3(a) of the Texas Code of Criminal Procedure.[2] See art. 37.07 sec. 3(a).

At the outset, we note that the decision of a trial court regarding the admissibility of extraneous offense evidence is reviewed under an abuse of discretion standard. See Saenz v. State, 843 S.W.2d 24, 26 (Tex.Crim.App. 1992). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. Montgomery, 810 S.W.2d at 391.

Appellant's issue confuses the obligations of the trial judge and the jury in considering evidence of extraneous offenses. The trial judge has the obligation to make a determination, upon proper request, of whether the proposed evidence is relevant to the issue of punishment. See Nanez v. State, 179 S.W.3d 149, 151 (Tex.App.–Amarillo 2005, no pet.), see also Banks v. State, No. 02-05-118-CR, 2006 Tex. App. LEXIS 8901 (Tex.App.–Fort Worth October 5, 2006, no pet.) (not designated for publication). In the case before us, even though appellant had prior knowledge that the State would offer the evidence of his involvement in the drive-by-shooting, there was no request for a hearing to determine the admissibility of this evidence prior to the introduction of the testimony in question. Once the evidence was before the jury, it is the duty of the jury, as the exclusive

---

[2]Article 37.07 sec. 3(a) states in relevant part:

Evidence may be offered by the state and the defendant as to any matters the court deems relevant to sentencing including but not limited to . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

trier of fact, to determine whether the State has proven the extraneous offense or act beyond a reasonable doubt. Nanez, 179 S.W.3d at 152. After all the punishment evidence was presented, the trial court properly charged the jury that they could not consider such extraneous offense or act unless "you find and believe beyond a reasonable doubt that the defendant committed such acts or was criminally responsible as a party for such acts." See Huizar v. State, 12 S.W.3d 479, 483 (Tex.Crim.App. 2000). In this case, the trial court did exactly what is required of it when considering the issue of extraneous offenses or bad acts.

Based upon the foregoing, we cannot say that the trial court abused its discretion in refusing to strike the testimony of the three witnesses. Saenz, 843 S.W.2d at 26. Accordingly, we overrule appellant's second issue.

Conclusion

Having overruled appellant's two issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Publish.