# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00192-CR

**Jose Arturo Ramirez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT NO. B-05-0677-S, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Jose Arturo Ramirez appeals his conviction for possession with intent to deliver a controlled substance, to wit: Methamphetamine, in an amount by aggregate weight of four (4) grams or more but less than two hundred (200) grams including any adulterants and dilutants. *See* Tex. Health & Safety Code Ann. § 481.112(d) (West 2003). After his pretrial motion to suppress evidence was overruled by Judge Jay Weatherby, appellant, on March 5, 2007, waived trial by jury, and entered a guilty plea to the indictment before Judge Thomas J. Gossett. There was no plea bargain. Judge Gossett assessed punishment at ten (10) years' imprisonment. Following the imposition of sentence, appellant gave notice of appeal.

In a sole issue on appeal, appellant Ramirez contends that at the suppression hearing, the trial court erred in overruling his *Franks v. Delaware*, 438 U.S. 154 (1978) claim as to the veracity of the search warrant. On appeal appellant does not advance any contention that the affidavit supporting the combination arrest and search warrant contained within its four corners

insufficient probable cause information in violation of the federal and state constitutions provisions.[1]

This type of contention is entirely different from a challenge under *Franks* to the truthfulness of a

warrant affidavit and whether the affiant made knowing misrepresentations to establish probable

cause. *Cates v. State*, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003). When the defendant

challenges the warrant affidavit on the ground that it contains a known falsehood, the trial court is

not limited to the four corners of the affidavit. *Id.* As appellant's sole issue is his *Franks* claim, we

first review the applicable law.

In *Franks*, the Court held:

> [w]here the defendant makes a substantial preliminary showing that a false statement
> knowingly and intentionally, or with reckless disregard for the truth, was included by
> the affiant in the warrant affidavit, and if the allegedly fake statement is necessary to
> the finding of probable cause, the Fourth Amendment requires that a hearing be held
> at the defendant's request.

*Id.* 438 U.S. at 155-56.

The burden is on the defendant to make a preliminary showing of the deliberate

falsehoods or of statements made in reckless disregard for the truth in the affidavit for a search

warrant. *Franks*, 438 U.S. at 171. The *Franks* opinion explained:

> To mandate an evidentiary hearing, the challenger's attack must be more than
> conclusory and must be supported by more than a mere desire to cross-examine.
> There must be allegations of deliberate falsehood or of reckless disregard for the
> truth, and those allegations must be accompanied by an offer of proof. They should
> point out specifically the portion of the warrant affidavit that is claimed to be false;
> and they should be accompanied by a statement of supporting reasons. Affidavits or

---

[1]  *See* U.S. Const. Amends. IV, XIV; Tex. Const. art. I, § 9; *see also Jones v. State*,
833 S.W.2d 118, 123 (Tex. Crim. App. 1992).

sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id*.

In *Cates*, the Texas Court of Criminal Appeals discussed the three-part test for obtaining an evidentiary hearing under *Franks*. The defendant must:

(1)     Allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false;

(2)     Accompany these allegations with an offer of proof stating the supporting reasons; and

(3)     Show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support the issuance of the warrant.

*Cates*, 120 S.W.3d at 356 (quoting *Ramsey v. State*, 579 S.W.2d 920, 922-23 (Tex. Crim. App. 1979)).

These specific allegations and evidence must be apparent in the pleadings in order for a trial court to even entertain a *Franks* proceeding. *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007).[2]

---

[2]  The importance of the three-pronged substantial preliminary showing is reflected by the opinions in *Harris v. State*, 227 S.W.3d 83 (Tex. Crim. App. 2007) and *Cates v. State*, 120 S.W.3d 352 (Tex. Crim. App. 2003). In *Cates*, the court held that the trial court abused its discretion when it refused to allow defense witnesses to testify at a *Franks* evidentiary hearing after the defendant had made a substantial preliminary showing of falsity and the State had been permitted to offer testimony as to the search warrant affidavit's accuracy. 120 S.W.3d at 355, 359. In *Harris*, the court held that a defendant fails to preserve for appellate review a *Franks* claim under the Fourth Amendment when he does not make a substantial preliminary showing as required. 227 S.W.3d at 85-86.

3

Once the defendant establishes the requisites of a substantial preliminary showing required to obtain a full *Franks* evidentiary hearing, he has the burden of establishing at that hearing the allegation of a falsehood or a reckless disregard for the truth by a preponderance of the evidence. *Franks*, 438 U.S. at 155-56; *Harris*, 227 S.W.3d at 85; *Jordan v. State*, 271 S.W.3d 850, 854 (Tex. App.—Amarillo 2008, no pet.). At this full *Franks* hearing, a defendant may present evidence that goes beyond the four corners of the affidavit underlying the search warrant. *Franks*, 438 U.S. at 155-56; *Jordan*, 271 S.W.3d at 854. If, after the hearing, the trial court finds that the defendant has sustained his burden of proof, the false information in the affidavit must be disregarded. *Harris*, 227 S.W.3d at 85; *Jordan*, 271 S.W.3d at 854. If the remainder of the affidavit is not sufficient to support the issuances of the search warrant, the warrant is voided, and the evidence seized under the warrant is excluded. *Franks*, 438 U.S. at 156; *Harris*, 227 S.W.3d at 85.

A *Franks* claim is not mandated to be presented pretrial, but may be timely raised during the trial itself as an objection to the admissibility of evidence. In the *Franks* case, the violation of the Fourth Amendment claim was presented as an amendment to a motion to suppress evidence. 438 U.S. at 157, 158. In Texas, the disposition of a *Franks* claim is often superimposed on our pretrial motion to suppress evidence practice. *See* Tex. Code Crim. Proc. Ann. art. 28.01(6) (West 2006). The two procedures have their differences and do not always neatly dovetail.[3]

---

[3] In *Cates*, the court stated:

*Frank*s itself states that a person who has made a substantial preliminary showing of falsity in the affidavit is entitled to an "evidentiary hearing." That phrase, "evidentiary hearing," normally means a live hearing in court with witnesses on the witness stand. But we need not today decide whether a *Franks* evidentiary hearing must always be conducted with live witnesses because, in this case, the trial judge did

4

A pretrial motion to suppress evidence is permitted within the trial court's discretion. *See id*. It is nothing more than a specialized objection to the admissibility of evidence. *Galitz v. State*, 617 S.W.2d 949, 952 (Tex. Crim. App. 1981). It must meet the specificity requirements of an objection. *See* Tex. R. App. P. 33.1(a)(1)(A); *Carroll v. State*, 911 S.W.2d 210, 218 (Tex. App.—Austin 1995, no pet.); *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex. App.—San Antonio 1990, no pet.).

Appellant filed a pretrial motion to suppress evidence. It contained several boilerplate paragraphs with conclusory allegations attacking the lack of probable cause on the face of the affidavit underlying the search warrant.[4] In addition, section 6(a) of the suppression motion alleged:

> The search warrant was illegally issued because the issuing magistrate was misled by information in the affidavit that the affiant-officer knew was false or would have known was false except for his reckless disregard for the truth.

The allegations are conclusory and do not specify what information in the affidavit is false, and it does not alert the trial court by citing *Franks*. These allegations alone fall far short of what is required to make a substantial preliminary showing under *Franks*. *See Harris*, 227 S.W.3d at 85.

> not allow appellant the opportunity to offer evidence to prove his *Franks* claim in any of the ways set out in article 28.01, § 1(6). Accordingly, by denying the defendant the opportunity to present testimony or any other evidence to prove his specific allegations of falsity, the trial court denied appellant his right to a full *Franks* hearing.

120 S.W.3d at 359 (citations omitted).

[4] These allegations, never pursued by appellant, appear to be in procedural default as far as preserving error on appeal. *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Martinez v. State*, 17 S.W.3d 677, 682-83 (Tex. Crim. App. 2000).

On October 17, 2006, the day before the suppression hearing, appellant filed a memorandum of law brief. In part it was just that. Appellant, however, used the balance of the memorandum in an attempt to make a substantial preliminary showing as required by *Franks* that a false statement or statements had been used in the search warrant affidavit. Appellant alleged in the memorandum that the officer-affiant had deliberately falsified the name of the "suspected party" in possession of methamphetamine and in charge of the premises to be searched as "Rodolfo Bocanegra Ramirez," who in fact was appellant's father. As an offer of proof appellant attached copies of the search warrant and its affidavit, an updated police report, and appellant's affidavit. Appellant swore that his name was Jose Arturo Ramirez whose date of birth was "03/20/72," that he had been a tenant for two months at the location where the search was conducted, and that his father, Rodolfo Bocanegra Ramirez, had never been present at appellant's apartment prior to the execution of the search warrant. In concluding his "memorandum," appellant claimed that the removal from the affidavit of the false statements or those made in the reckless disregard for the truth would leave the affidavit lacking probable cause and void the warrant. Here, appellant attempted to use the "memorandum" as a "Bill of Exception" was used in *Cates*, 120 S.W.3d at 356.

At the commencement of the pretrial suppression hearing, appellant alerted the trial court to the fact that evidence would be offered going beyond the four corners of the affidavit supporting the search warrant in order to show a false statement therein. The trial court responded, "I have reached your memorandum of law." The prosecutor acknowledged that appellant was proceeding under *Franks*.

6

By-passing the normal flow of the burden of proof at a regular pretrial suppression hearing[5] and a defendant's burden by a preponderance of evidence under a *Franks* claim, appellant offered the State the opportunity to take the lead and introduce the search warrant and its supporting affidavit. The State agreed and did so. In the process, the State presented the only witnesses to testify—two Texas Department of Public Safety officers. It was from these two witnesses that appellant sought to establish his *Franks* claim by a preponderance of the evidence. During the cross-examination of the first officer, Byron Martin, the State objected to appellant going outside the four corners of the affidavit in his interrogation. Appellant called attention to his memorandum of law and its attachments. The trial court permitted the interrogation, signaling that it was satisfied that appellant had made his substantial preliminary showing required by *Franks*.[6] Reference to appellant's affidavit attached to the memorandum of law was made by defense counsel, but it was never introduced into evidence nor was it recited or read into the record.

Sergeant-Investigator Jeffery Todd Cummins of the Texas Department of Public Safety testified that he had been stationed in Tom Green County and that on October 13, 2004, he

---

[5] *See Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002); *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986).

[6] In *Jordan v. State*, 271 S.W.3d 850 (Tex. App.—Amarillo 2008, no pet.), it was unclear whether the trial court required the defendant to make a substantial preliminary showing as required by *Franks*. There was a hearing where the trial court required the State to develop from the officer-affiant all the facts leading up to the issuance of the search warrant and allowed extensive cross-examination of the affiant about the same subject. The court then stated:

> We will assume, for purposes of this opinion, that appellant made the requisite preliminary showing and that the trial court conducted a full *Franks* hearing.

*Id.* at 853. *Cf. Harris*, 227 S.W.3d at 85.

became the lead investigator into activities involving methamphetamine possession. On that date, he made contact with a confidential informer (hereinafter CI) who had indicated that he could purchase methamphetamine from a subject at 1300 Millspaugh in San Angelo. Sergeant Cummins set up a controlled buy by giving marked money to the CI and searching the CI and his vehicle for contraband. The CI was followed by Sergeant Cummins and other officers to the address in question. They saw the CI and suspect enter the house. The CI later met the officers at another location with a substance later shown to be methamphetamine. The CI stated the suspect's nickname was "Pepe." Sergeant Cummins checked the utility records at 1300 Millspaugh and the registration of a vehicle parked at the address. He concluded that the suspect was Rodolfo Bocanegra Ramirez whose date of birth was "05/18/51." Thereafter, Sergeant Cummins was transferred to Amarillo. He left the record of his investigation in San Angelo.

Texas Department of Public Safety Sergeant-Investigator Byron Martin testified that he continued the investigation in San Angelo in November, 2004. He contacted the same CI used by Cummins, who informed Martin that the suspect, Pepe Ramirez, had moved, and now lived at an apartment complex—"The Cliff House" at 1820 South Harrison Street apartment No. 61 in San Angelo. From information gathered by Sergeant Cummins, Sergeant Martin believed that the suspect was Rodolfo Bocanegra Ramirez. He decided to set up another controlled buy on November 29, 2004. Again, the CI and his vehicle were searched to ensure that no contraband was available to the CI. The CI was then given marked money. Sergeant Martin and his surveillance team followed the CI and observed him and the suspect enter the described apartment No. 61. When the CI left the apartment, he met Sergeant Martin at a different location where he produced the substance purchased.

8

On December 1, 2004, Sergeant Martin obtained a search warrant based on his affidavit, alleging, *inter alia*, that Rodolfo Bocanegra Ramirez, "date of birth 05/18/51," was "the suspected party" in charge of the described apartment No. 61, and in possession of methamphetamine. The affidavit further alleged that the affiant-Martin had received information from a CI, who had given information on several occasions about controlled substances that proved true and correct, and had led to the seizure of contraband. The affidavit further alleged that the CI had correctly identified methamphetamine in the affiant's presence which was confirmed by the affiant and field testing; and that the affiant had seen the CI enter apartment No. 61 and return with the report that he had seen additional methamphetamine in the apartment in possession of the suspect Ramirez.

The search warrant authorized the search of the described apartment No. 61, the seizure of the methamphetamine, the arrest and search of "any people occupying and/or controlling said residence" and to bring before the court "all of the suspected parties."

On December 2, 2004, the search warrant was executed at the described premises. Appellant, Jose Arturo Ramirez, date of birth "03/20/72," was the only person present at the time. Methamphetamine in the amount of approximately 105 grams was found in the apartment along with over $3,571, some of which was marked money previously used.

Sergeant Martin testified that he had no reason to believe the name of the "suspected party" in the affidavit was incorrect. He did not learn of appellant's name until the time of the execution of the search warrant. He then learned that appellant was the son of Rodolfo Bocanegra Ramirez. He acknowledged that he had relied upon Sergeant Cummins's investigation and the CI's information that Pepe Ramirez had moved to a new address. Sergeant Martin admitted that he had

9

not checked to see in whose name the utilities in apartment No. 61 had been registered nor had he checked the registration of motor vehicles parked near the described apartment No. 61. When asked, Sergeant Martin agreed that he had not conferred with the manager of the apartment complex about the tenant in apartment No. 61, but stated that these apartment managers are often involved in narcotics trafficking themselves. Sergeant Martin stated that his reliance upon the past investigation was "sloppy" police work to an extent.

Appellant did not call any witnesses. Appellant's affidavit was mentioned but it was never introduced into evidence. Even if it had been, it did not contradict the testimony of the State's two witnesses. Appellant argues that Sergeant Martin saw the CI and the suspect enter apartment No. 61 prior to the drafting of the affidavit and the officer should have observed the difference in age between the suspect with the CI and the known age of Rodolfo Bocanegra Ramirez as reflected by the earlier investigation. This issue was not fully explored by the testimony to establish Sergeant Martin's position of surveillance nor the clothing worn by the suspect entering the apartment with the CI.

After the arguments of counsel at the hearing, the trial court overruled the motion to suppress evidence. The trial court stated that there was no disagreement among the parties as to the search warrant being "proper in form in all the necessary prerequisites" except for the claimed misrepresentation in the supporting affidavit. The trial court stated that the name of the "suspected party" was incorrect but it was unclear that Sergeant Martin knew that the name was "false," and, in fact, the evidence suggested the opposite. No written findings of fact or conclusions of law were made, and none were requested.

The trial court at a suppression hearing, even one involving a *Franks* claim, is the sole trier of fact and the judge of the credibility of the witnesses and the weight to be given the evidence. *Hinojosa v. State*, 4 S.W.3d 240, 247 (Tex. Crim. App. 1999); *Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996); *Taylor v. State*, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980); *see generally Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). The trial court is free to believe or disbelieve all or any part of a witness's testimony even if the testimony is controverted. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

We generally review a trial court's ruling on a pretrial motion to suppress evidence for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). The trial court's ruling should be upheld so long as it is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990). When we review a trial court's ruling on a motion to suppress, we give great deference to the trial court's determination of historical facts supported by the record while we review the application of the law to the facts *de novo*. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Balentine*, 71 S.W.3d at 768; *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997).[7]

---

[7] For a more detailed discussion of the standard of review, *see Amador*, 221 S.W.3d at 673; *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

The testimony of the two officers at the suppression hearing was essentially undisputed. Sergeant Martin admitted that an incorrect name was used on the affidavit as the "suspected party," but he denied that there was a deliberate misrepresentation in the affidavit. He did not know appellant's name until the search warrant was executed. He had relied, in drafting the affidavit, upon Sergeant Cummins's investigation report and a conversation with the CI. By the testimony of the two State's witnesses, did appellant sustain his burden of proof on his *Franks* claim?

The Fourth Amendment demands a factual showing in the search warrant affidavit to comprise probable cause, thus the obvious assumption is that a truthful showing will be made. *See Franks*, 438 U.S. at 164-65; *Dancy v. State*, 728 S.W.2d 772, 780-81 (Tex. Crim. App. 1987). Quoting from Judge Frankel's opinion in *United States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966), the *Franks* court stated:

> This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed and appropriately accepted by the affiant as true.

*Franks*, 438 U.S. at 165.

Further, if the statement or statements in the search warrant affidavit which are claimed to be false or made in reckless disregard for the truth constitute an instance where the police have been merely negligent in checking or recording the facts relevant to a probable cause determination, it is beyond the pale of *Franks*. *Dancy*, 728 S.W.2d at 782.

12

Having reviewed the record of the hearing, and applying the standard of review, we find that the trial court did not abuse its discretion in overruling the suppression motion relating to appellant's *Franks* claim. Appellant failed to establish by a preponderance of the evidence that the affiant Martin intentionally made a false statement or one in reckless disregard for the truth in the search warrant affidavit. *Id.*; *Blocker v. State*, 264 S.W.3d 356, 360 (Tex. App.—Waco 2008, no pet.). The sole point of error is overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Patterson, Henson and Onion*

Affirmed

Filed:   November 5, 2009

Do Not Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).