# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00521-CR

---

**Scott Taylor, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-DC-22-904052, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Scott Taylor appeals from the trial court's order denying his two motions to suppress evidence that was obtained from a blood draw performed pursuant to a search warrant. Following the order, Taylor pleaded guilty to intoxication manslaughter with a deadly weapon in exchange for an agreed sentence of twenty years' confinement. *See* Tex. Penal Code § 49.08(a).[1] The trial court accepted Taylor's guilty plea, sentenced him to the agreed punishment, and gave him permission to appeal its order denying his motions to suppress. *See* Tex. R. App. P. 25.2(a)(2)(B). In two issues, Taylor contends that the affidavit supporting the search warrant failed to allege facts sufficient to establish probable cause for the search and that the trial court abused its discretion by denying him a hearing under *Franks v. Delaware* at which he could

---

[1] The State agreed to waive a second count, alleging manslaughter, and not to attempt to reindict Taylor for felony murder. *See* Tex. Penal Code §§ 19.02(b)(3), .04(a).

challenge the affidavit's truthfulness.  438 U.S. 154, 155–56 (1978).  We affirm the trial court's judgment of conviction.

## BACKGROUND

This case involves a 2021 vehicle collision in Austin, Texas, in which Colton Roberts sustained fatal injuries.  After the crash, Officer Seth Dooley arrested Taylor for driving while intoxicated (DWI) and applied for a search warrant to obtain a sample of Taylor's blood.  In support of his warrant application, Officer Dooley swore an affidavit to show probable cause for the search.  The following facts about the collision, largely provided to Officer Dooley by Officer Ronald Preston, are drawn from the affidavit, which consisted of both a completed form as well as a narrative attestation.

At around 9 p.m. on August 17th, 911 operators received multiple calls reporting a "head on collision."  Two of the callers, who identified themselves to officers, spoke with Officer Preston at the scene and reported that before the crash, Roberts had been in the center turn lane, waiting to turn.  Taylor, who was driving in the opposite direction without headlights, "took a hard left into the center turn lane" and caused his vehicle to "slam violently" into the front of Roberts's car.  The impact caused Roberts's car "to spin around 180 degrees backwards, approx[imately] 30–40 feet."  The witnesses described the road as "dimly lit."

Roberts was pulled from the car and rushed to the hospital with life-threatening injuries, from which he later died.  Taylor was treated by EMS at the scene and taken to the hospital as well.  Taylor told EMS personnel that he had "'smoked a blunt' earlier in the day, prior to driving."  However, he "changed his answer" when speaking with hospital staff and denied "any and all drug or alcohol use."

2

When Officer Dooley "informed" Taylor about the crash, Taylor was "unaware of any details." Officer Dooley related the account given by the two witnesses to Officer Preston, and Taylor began to cry and called himself a "fucking idiot." Taylor blamed the crash on "bad life choices" but would not elaborate when asked what he meant. He refused to answer any additional questions.

Officer Dooley noted in his affidavit that Taylor had lied.[2] On the form portion of the affidavit, Officer Dooley did not make a notation in the space provided next to "Alcoholic Beverage Odor" and checked the box indicating that Taylor had not been in possession of drugs or alcohol. Officer Dooley explained that because of Taylor's injuries, neither standardized field sobriety tests, a drug recognition evaluation (DRE), nor a preliminary breath test (PBT) could be performed. The affidavit elsewhere stated that Taylor had refused the PBT. Officer Dooley wrote that he had requested a sample of Taylor's "breath and/or blood," but Taylor—"in an attempt to conceal evidence of intoxication"—had "refused to provide a breath and/or blood sample."

Officer Dooley, who stated that he had been a peace officer for around seven-and-a-half years and had "training and experience in recognizing intoxicated . . . drivers," determined that Taylor was intoxicated "by not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." A magistrate judge granted Officer Dooley's application and issued a search warrant for Taylor's blood around three hours after the collision.

---

[2] In the field for "Unusual actions," Officer Dooley noted "Lying," without elaboration. The magistrate could have reasonably inferred that Taylor had lied by denying all drug use to hospital staff.

3

Taylor filed two motions to suppress evidence obtained from the search. The first argued that there were no "indicia of facts" that he was intoxicated at the time of the accident. He later amended the motion to also argue that Officer Dooley's failure to note certain observations regarding Taylor's behavior and demeanor in his affidavit meant that they "were not noticed by law enforcement at the time they sought the warrant at issue."

In Taylor's second motion to suppress, he requested a *Franks* hearing and asserted that "there exist[] material omissions of fact by Officer Dooley that if known to the magistrate would have precluded a probable cause determination to justify the seizure of Taylor's blood." At the first of two hearings on Taylor's motions, defense counsel stated that the omissions were "threefold" and that Officer Dooley had not mentioned "anything about speech," the "smell of marijuana or alcohol," or "the lack of drugs or alcohol in the car or any indicia of drugs or alcohol in the car."

Counsel also stated during the hearing that he could "represent as an officer of the [trial c]ourt" that Officer Dooley was never told *when* Taylor smoked marijuana and that Officer Dooley instead "took some sort of license." Counsel informed the trial court that his representation was based on Officer Preston's body-cam video, which was not admitted at either of the hearings in the court below and is not in the record before us on appeal. During the second hearing, however, counsel instead argued that the affidavit included "a statement attributed to Mr. Taylor in talking to EMS that was overheard by an officer, saying that [Taylor] smoked a blunt earlier in the day"; that "[e]arlier in the day could be anytime within the previous 21 hours"; and that therefore there was "no nexus between the smoking of the blunt and the—and the accident."

4

At the conclusion of the second hearing, the trial court made the following oral findings:

> [Taylor] has not made a substantial preliminary showing that a false statement or omission was made by Officer Dooley, or that Officer Dooley acted knowingly or intentionally or with reckless disregard for the truth. And if we assumed that Officer Dooley did act with those intentions by including the—only the words 'earlier in the day,' these words are not necessary to the finding of probable cause. This Court makes that finding.
>
> And this Court believes that there were no omissions because in our county—or Austin Police Department has boxes that they do check or don't check, and certain boxes that the defense pointed out were unchecked on the affidavit which meant that there were no signs of those—of those indications of intoxication. So I don't find any deception in that regard either.
>
> The Court finds that based upon the totality of the following circumstances: The defendant's admission of smoking a blunt to EMS, the witnesses' description of Mr. Taylor's extremely reckless driving which took the life of another person, a young person,[3] his driving in the center lane, driving with no headlights, hitting another vehicle head-on, and defendant's refusal to give blood or breath—a blood or breath specimen to the nurses, and his inconsistent statement to hospital staff regarding his marijuana use, and, you know, his—he was given ketamine to save his life. The victim in this case didn't have that opportunity. So the police officers were not able to speak with him coherently because he had had ketamine immediately, or take the appropriate field sobriety test.
>
> And based upon all of these factors, the Court finds that probable cause was correctly found in Officer Dooley's affidavit.

The trial court denied both of Taylor's motions to suppress. This appeal followed.

## DISCUSSION

In two issues, Taylor contends that the probable-cause affidavit supporting Officer Dooley's search-warrant application (1) failed to allege facts sufficient to establish

---

[3] In his brief, Taylor correctly notes that the affidavit did not aver that Roberts had died.

5

probable cause and (2) suffered from material omissions, which—had they been included—would have precluded a probable-cause finding.

## I. Whether the affidavit was sufficient to establish probable cause

A search warrant must be supported by probable cause, which exists when the search-warrant affidavit shows that there is a fair probability that evidence of an offense will be found at a specified location. *See* U.S. Const. amends. IV, XIV, § 1; Tex. Code Crim. Proc. arts. 1.06, 18.01(b); *Diaz v. State*, 632 S.W.3d 889, 892 (Tex. Crim. App. 2021). This standard is "flexible and non-demanding." *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011).

A magistrate reviews the affidavit to determine whether it shows probable cause. The magistrate is bound by the four corners of the affidavit, and its fact statements are presumed valid, a presumption that precludes credibility determinations. *See Franks*, 438 U.S. at 171; *State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017); *McLain*, 337 S.W.3d at 272. But because the affidavit may make the probable-cause showing "under the totality of the circumstances," the magistrate may consider not only what the affidavit says but also any logical, reasonable inferences that may be drawn from its facts. *See Elrod*, 538 S.W.3d at 556, 560; *McLain*, 337 S.W.3d at 271–74. The inferences may themselves draw on "common-sense conclusions about human behavior . . . [as] understood by those versed in the field of law enforcement." *Elrod*, 538 S.W.3d at 560 (quoting *Illinois v. Gates*, 462 U.S. 213, 231–32 (1983)). The affidavit's facts plus reasonable inferences give rise to a "combined logical force," which take precedence over whatever "other facts could or should have been included in the affidavit." *See id.* (quoting *State v. Duarte*, 389 S.W.3d 349, 354–55 (Tex. Crim. App. 2012)); *see also McLain*, 337 S.W.3d at 273 (requiring courts to "review warrant affidavits as a whole").

6

Our review of a magistrate's decision that probable cause to issue a warrant existed is highly deferential and not *de novo*. *See Elrod*, 538 S.W.3d at 556; *see also Patterson v. State*, 663 S.W.3d 155, 158–59 (Tex. Crim. App. 2022) (stating that "the reviewing court should regard the magistrate's decision to issue the warrant with great deference"); *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004) (recognizing "the distinction between the standards of review applicable to warrantless searches and searches pursuant to a warrant"). If the magistrate had a "substantial basis" for deciding that there was probable cause, then we uphold the decision. *See Elrod*, 538 S.W.3d at 557; *McLain*, 337 S.W.3d at 271. Review is deferential in part because we must interpret the affidavit "in a common sense and realistic manner," not "in a hyper-technical manner." *See Elrod*, 538 S.W.3d at 556; *McLain*, 337 S.W.3d at 271. It is also deferential because we must usually call close cases in favor of the magistrate's decision to encourage police to use the warrant process. *See Elrod*, 538 S.W.3d at 556; *Duarte*, 389 S.W.3d at 354; *McLain*, 337 S.W.3d at 271. We defer to all reasonable inferences that the magistrate could have made. *McLain*, 337 S.W.3d at 271.

A person commits the offense of DWI if he is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code § 49.04(a). The Penal Code defines "intoxicated" in relevant part as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id.* § 49.01(2)(A).

The circumstances of the accident itself were particularly probative of the existence of probable cause to search Taylor's blood for evidence of intoxication. *See Wiede v. State*, 214 S.W.3d 17, 26 (Tex. Crim. App. 2007) (disapproving of appellate court's failure to consider accident's circumstances when reviewing probable-cause determination). Witnesses

7

described the accident as "bad" and a "head on collision" and reported that Taylor had suddenly veered into another lane and struck Roberts's stationary vehicle. *See Duarte*, 389 S.W.3d at 356 ("The citizen-informer is presumed to speak with the voice of honesty and accuracy."). Although the crash occurred at night, and the witnesses characterized the road as "dimly lit," Taylor did not have his headlights activated. Officer Dooley attested that "[p]er the National Highway Traffic Safety Administration, driving without headlights at night and driving in opposing lanes [are] possible indicator[s] of intoxication."

From the facts that Taylor slammed violently into Roberts's car and caused it to spin backward for over thirty feet, the magistrate could have reasonably inferred that Taylor had been driving at a high rate of speed. The accident was grave enough that both Taylor and Roberts were taken to the hospital, the latter with life-threatening injuries after being pulled from his vehicle.

Despite defense counsel's assertion that Taylor had not said that he smoked a blunt earlier "in the day," counsel did not dispute that Taylor had admitted to smoking a blunt.[4] And Taylor denied having used any drugs to hospital staff, from which Officer Dooley concluded that he had lied. Only at most a few hours after the crash, Taylor was unaware of any details regarding it. When confronted with the collision's severity, he began to cry, called himself an idiot, and blamed the crash on his bad life choices. Notably, he then refused to explain what he meant or to answer any additional questions. He also refused to provide a breath

---

[4] Counsel represented to the trial court that that statement relayed to Officer Dooley "with regards to the blunt admission, did not contain anything about earlier quote/unquote in the day or anything."

or blood sample. Officer Dooley, who had more than seven years of experience as a peace officer and training in recognizing intoxicated drivers, determined that Taylor was intoxicated.[5]

Taylor argues that absent a "specific" allegation in the affidavit as to when he smoked marijuana, "there is no likelihood that intoxicants existed in [his] body . . . [and] would be discovered in his system" at the time of the search. In support of his argument, Taylor relies on *Crider v. State*, in which the Court of Criminal Appeals held that an affidavit in support of a search warrant to draw blood that did not state the time of the offense did not establish probable cause that the blood would contain evidence of intoxication because neither the affidavit nor surrounding circumstances sufficiently limited the range of possible times of the offense. 352 S.W.3d 704, 710–11 (Tex. Crim. App. 2011). The officer stated in his affidavit that he stopped Crider on June 6, 2008, without stating a time of the encounter, and no allegation in the affidavit (i.e., whether the sun had set) helped inform the magistrate of when the offense occurred. *Id.* at 710. The warrant, signed at 1:07 a.m. the day after the stop thus allowed for a possible 25-hour gap between the time of the stop and the time of the affidavit. *Id.* The Court distinguished between permissibly drawing inferences from information in the affidavit and reading material information into the affidavit. *Id.*

The Court also distinguished its decision in *Crider* from its decision in *State v. Jordan*, in which the affidavit did not recite when the offense occurred, but the warrant issued at 3:54 a.m. on the same day as the alleged offense, capping the possible time between the

---

[5] Although defense counsel made much of Officer Dooley having received information from Officer Preston, observations reported to an affiant by other officers engaged in an investigation can constitute a reliable basis for issuing a warrant. *See United States v. Ventresca*, 380 U.S. 102, 108–09 (1965). Moreover, when multiple officers are involved in the same investigation, "all of the information known to the cooperating officers at the time of the arrest is considered in determining probable cause." *Porter v. State*, 969 S.W.2d 60, 65 (Tex. App.— Austin 1998, pet. ref'd).

9

offense and warrant at four hours. *See State v. Jordan*, 342 S.W.3d 565, 571 (Tex. Crim. App. 2011). The Court held that, given the signs of intoxication alleged and the rate of dissipation of alcohol in the bloodstream, the magistrate could reasonably have believed that Jordan's blood would contain evidence of intoxication up to four hours later. *Id.* at 572.

According to Officer Dooley's affidavit, 911 began to receive calls about the crash at 9:08 p.m. The search warrant for Taylor's blood issued around three hours later, at 12:15 a.m. the following day. Given the indications of intoxication described in the affidavit, it was not unreasonable for the magistrate to conclude that there would still be evidence of intoxication in Taylor's blood when the warrant was signed. The exact time at which Taylor consumed any intoxicant is beside the point, so long as the magistrate had a substantial basis for inferring that evidence could be obtained from Taylor's blood. Considering the short duration between the crash, which a reasonable magistrate could have determined was caused at least in part by Taylor's intoxication, and the search warrant's issuance, the magistrate had a substantial basis for finding the existence of probable cause to search the blood. *See Elrod*, 538 S.W.3d at 557; *McLain*, 337 S.W.3d at 271.

From the facts recited within the affidavit's four corners, we conclude that it sufficiently stated probable cause for a search of Taylor's blood. *See Diaz*, 632 S.W.3d at 892; *Elrod*, 538 S.W.3d at 556. We overrule his first issue.

## II.  Whether Taylor made the necessary showing for a *Franks* hearing

As noted above, defendants may attack "the truthfulness of factual statements made in a search warrant affidavit" through a *Franks* challenge. *Diaz*, 632 S.W.3d at 892; *see*

10

*Franks*, 438 U.S. at 171–72. The United States Supreme Court held in *Franks* that when a defendant

> makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155–56.

"Allegations of negligence or innocent mistake are insufficient." *Id.* at 171. Moreover, to obtain a hearing, the defendant must accompany his allegations "with an offer of proof stating the supporting reasons" and demonstrate that after excision of the allegedly false portion of the affidavit, "the remaining content is insufficient to support issuance of the warrant." *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007); *see Franks*, 438 U.S. at 171–72.

Some courts have held that *Franks* challenges reach not only affirmative fact statements in an affidavit but also "material omissions" from the affidavit. *See Diaz*, 632 S.W.3d at 892 (citing *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980)); *see, e.g., Gonzales v. State*, 481 S.W.3d 300, 311 (Tex. App.—San Antonio 2015, no pet.). Neither the Court of Criminal Appeals nor our Court has decided that question. *See Diaz*, 632 S.W.3d at 892; *Diez v. State*, 693 S.W.3d 899, 917 (Tex. App.—Austin 2024, pet. ref'd); *see also Emack v. State*, 354 S.W.3d 828, 837–38 (Tex. App.—Austin 2011, no pet.) (noting that "[b]y its express terms, the holding in *Franks* applies only to affirmative misstatements" but assuming without deciding that *Franks* applies to omissions of fact); *cf. Brooks v. State*, 642 S.W.2d 791, 796–97 (Tex. Crim. App. 1982) (concluding that defendant's reliance on *Franks* was "misplaced" when he attacked affiant's failure to disclose certain facts to magistrate because *Franks* "relates not to

*omissions* of facts about an informant but only to *false statements* by the affiant"). We continue to leave the question open because the material-omission attack here fails on its merits. *See, e.g., Diaz*, 632 S.W.3d at 894–95; *Diez*, 693 S.W.3d at 918–19.

When making a substantial preliminary showing of a material falsehood or omission, a defendant may not present evidence going beyond the affidavit's four corners, and an appellate court may not consider such evidence when reviewing a lower court's decision to deny a *Franks* hearing. *See Cates v. State*, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003) (stating that trial court is required to go behind affidavit's four corners during *Franks* hearing only "if a defendant has made a substantial preliminary showing of deliberate falsity"); *Brooks*, 642 S.W.2d at 796–97 (explaining that "[a]bsent such a showing as would warrant a *Franks* hearing, this Court will not look beyond the four corners of the affidavit"); *Jordan v. State*, 271 S.W.3d 850, 854 (Tex. App.—Amarillo 2008, pet. ref'd) (noting that it is *during* the hearing "that appellant may present evidence that goes behind the four corners of the affidavit").

In his second issue, Taylor contends that the trial court erred by denying him a *Franks* hearing because certain facts were omitted from Officer Dooley's affidavit. Specifically, Taylor argues that the affidavit failed to recite that Officer Dooley did not observe: (1) the "smell of marijuana"; (2) "marijuana or any other drug found [in] his vehicle"; (3) "alcohol found in the vehicle"; (4) "blood shot eyes"; (5) the "smell of alcohol"; (6) "slurred speech"; or (7) any evidence "that suggested that [Taylor] 'smoke[d] a blunt' in any time proximate to the accident or [that] contributed to causing the accident."

First, as the trial court orally found during the second suppression hearing, the magistrate could have reasonably concluded that all but the first alleged fact were included in the affidavit. Consistent with the argument advanced in Taylor's first motion to suppress, the trial

12

court found that "Austin Police Department has boxes that they do check or don't check, and certain boxes that the defense pointed out were unchecked on the affidavit which meant that there were no signs of those—of those indications of intoxication."

The affidavit included blank spaces next to a list of potential subjects of observation:

| | |
|---|---|
| **Clothing:** | **Alcoholic Beverage Odor:** |
| **Eyes:** | **Balance:** |
| **Speech:** | **Attitude:** |
| **Walking:** | **Turning:** |
| **Unusual Actions:** Lying | |

Officer Dooley's decision to write nothing next to "Alcoholic Beverage Odor," "Speech," and "Eyes" could reasonably be understood to signify that he had not made any observations indicative of probable cause regarding these subjects. Moreover, the officer in fact checked the box indicating that no drugs or alcohol had been found on Taylor's person or in his vehicle:

Accused in Possession of Alcohol/Drugs ☐ Yes ☑ No

The alleged omissions regarding when Taylor smoked marijuana or that his marijuana use contributed to the crash are likewise contradicted by the record. The affidavit alleged that Taylor "told EMS he 'smoked a blunt' earlier in the day, prior to driving"; that he called himself a "fucking idiot" and began crying after being told about the crash; and that he blamed the crash on "bad life choices." Officer Dooley averred that when asked what choices

13

Taylor meant, he "refused to elaborate." A reasonable magistrate could have inferred that Taylor's crying, statements, and subsequent silence suggested that he both smoked marijuana and believed his intoxication had been the cause of the crash. In addition, Officer Dooley attested that Taylor's driving without headlights at night and in an opposing lane were potentially indicative of intoxication. And the officer, who had training in recognizing intoxicated drivers, stated that he had determined that Taylor was intoxicated and had driven his vehicle in that state.

To the extent that Taylor—by arguing that the affidavit did not allege that he smoked marijuana "in any time proximate to the accident"—intends to challenge the truthfulness of the statement that he told EMS he had smoked a blunt earlier in the day, he offers no evidence within the affidavit's four corners of the statement's falsity. *See Cates*, 120 S.W.3d at 355 n.3; *Brooks*, 642 S.W.2d at 796–97; *Jordan*, 271 S.W.3d at 854. In representing to the trial court "that 'in the day' was . . . not anything that was relayed to Dooley," defense counsel relied on a body-cam video that this Court could not consider even were it in the record. What is more, counsel acknowledged that he could not hear Officer Dooley on the video, that Officer Dooley "could have potentially had other conversations," and that counsel was "just trying to piece it together on one end of the conversation."

Second, the alleged omissions were not material under *Franks*. *See* 438 U.S. at 156. We have previously stated that an omitted fact is "material" if its inclusion would render the affidavit insufficient to show probable cause. *See Emack*, 354 S.W.3d at 838 (citing 40 George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 9:26 (3d ed. 2011)). In light of the facts giving rise to probable cause that were discussed in our analysis of Taylor's first issue, a reasonable magistrate would not have abused her discretion by continuing to find that probable cause for the search existed even if the affidavit had also

14

expressly stated each allegedly omitted fact. Conversely, as the trial court found, the magistrate could also have found probable cause existed if Officer Dooley had averred only that Taylor told EMS that he had smoked a blunt, without reference to when he did so.

For these reasons, we conclude that the trial court did not abuse its discretion by denying Taylor a *Franks* hearing. We overrule his second issue.

## CONCLUSION

Having overruled both of Taylor's issues, we affirm the trial court's judgment of conviction.

_____

Maggie Ellis, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed

Filed: July 11, 2025

Do Not Publish

15